IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| V. | ) | Case No. 1:10-CR-177 (AJT) |
| | ) | |
| **CHARLES MORANI KARGBO,** | ) | Sentencing: November 19, 2010 |
| | ) | |
| **Defendant** | ) | |
| | ) | |

### DEFENDANT'S POSITION ON SENTENCING FACTORS

Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.3 of the United States Sentencing Guidelines (the "Guidelines"), and this Court's Policy Regarding Procedures to be Followed in Guideline Sentencing, the defendant, CHARLES MORANI KARGBO, through counsel, states that he has received and reviewed the Presentence Investigation Report ("PSR") prepared in this case.

On August 20, 2010, following a jury trial, Mr. Kargbo was found guilty of conspiracy to commit Hobbs Act robbery, actual and attempted Hobbs Act robberies, and using and carrying a firearm during the commission of a crime of violence. The PSR indicates that the "advisory" custody guidelines range is 78-97 months for the conspiracy and robbery charges, to be followed by a total statutory mandatory minimum period of imprisonment of 57 years. Mr. Kargbo has filed timely objections to that calculation of the "advisory" custody guidelines range, as well as a challenge to the mandatory minimum. As to the Guidelines, Mr. Kargbo contends that the total offense level should be 18, the criminal history category should be I, with a resulting range of 27-33 months.

For the reasons set forth below, and in the motion to declare 924(c) unconstitutional, Mr. Kargbo submits that a sentence of incarceration of <u>seven years (84 months) and one day</u>, followed by five (5) years of supervised release, is sufficient <u>but not greater than necessary</u> to accomplish the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

ARGUMENT

I.    <u>The Sentencing Factors</u>

The Supreme Court in *Kimbrough v. United States*, 128 S. Ct. 558 (2007), and *Gall v. United States*, 128 S. Ct. 586 (2007), established that the Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory considerations spelled out in 18 U.S.C. § 3553(a). In two recent summary reversals, moreover, the Court expressed in no uncertain terms that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors. *Nelson v. United States*, 129 S. Ct. 890 (2009); *Spears v. United States*, 129 S. Ct. 840 (2009).

Moreover, the Supreme Court has made plain that its cases "do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable." *Nelson*, 129 U.S. at 892. "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Id.* (emphasis in original). In other words, sentencing courts commit legal error by using a Sentencing Guidelines range as a default to be imposed unless a basis exists to impose a sentence outside that range. *See also United States v. Johnson*, 553 F.3d 990, 996 (6th Cir. 2009)("[I]t is clear that *Spears* applies with equal force to sentencing decisions

under the new crack-cocaine Guidelines and that district courts may categorically reject and vary from the new Guidelines based on policy disagreements with those Guidelines.")

Courts must consider the recommended guideline range as one of seven co-equal statutory sentencing factors enumerated in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, 259-60 (2005). Those factors include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a).

Upon consideration of those factors, a sentencing court may find that the case falls outside the "heartland" contemplated by the guidelines, or that "the guidelines sentence itself fails properly to reflect the § 3553(a) considerations," or that "the case warrants a different sentence regardless." *Rita v. United States*, 127 S.Ct. 2456, 2465 (2007) (emphasis added). While the District Court must begin its analysis by correctly calculating the advisory sentencing range, the sentencing court is then free in light of the other statutory sentencing factors to impose an entirely different sentence. This is because, under *Rita,* a district court is free simply to disagree, based on the § 3553(a) sentencing factors, with the U.S.S.G.'s "rough approximation" of the appropriate sentence for any given case. *Id.*

The primary directive in the actual language of §3553(a) is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing.(emphasis added). After *Booker* and *Gall*, therefore, sentencing courts must impose the minimum sentence that is sufficient to accomplish the objectives of § 3553(a). Indeed, whatever sentence the court imposes after appropriately considering all the statutory sentencing factors – "whether inside, just outside, or significantly outside the Guidelines range" – must be reviewed by a Court of Appeals under a "deferential abuse-of-discretion standard" *See Gall,* 128 S.Ct. at 591 (reversing Court of Appeals and reinstating a probationary sentence where advisory sentencing range was 30-37 months).

II.     A Sentence of Seven Years (84 months) and One Day is Sufficient to Satisfy the Statutory Purposes of Sentencing Under 18 U.S.C. § 3553(a) as to Mr. Kargbo.

      A.     The Nature and Circumstances of the Offense Conduct of Mr. Kargbo

It is undisputed that the person who actually committed the armed robberies and attempted robberies was Andualem Kusa, and that Mr. Kargbo never possessed, carried, or otherwise used a firearm. In addition, there was absolutely no evidence that Mr. Kargbo in any way assisted, directed, aided, or abetted the use or possession of the firearm by Kusa. The only reason Mr. Kargbo was convicted of the non-conspiracy counts was under a *Pinkerton* theory of liability.

The contention of the government at trial, and the testimony of Kusa, was that Mr. Kargbo participated in the scheme by helping to choose possible robbery locations and by stealing license plates to be put on Kusa's vehicles when a robbery was to be attempted. However, the only evidence to suggest that Mr. Kargbo was involved in choosing robbery

locations was the questionable and inconsistent testimony of Kusa regarding United Bank and Bank of America. The credible trial evidence showed that Mr. Kargbo was a regular and well-known customer of that United Bank branch, who would be immediately recognized on sight, and that he did not wear any type of disguise on the two days in question when he was at that bank. Kusa testified that he (Kusa) was a regular customer of the Bank of America branch and did not know if Kargbo banked there. Kusa also testified that Miguel picked some robbery locations, and that Kusa also acted completely alone and unassisted on several robberies.

In addition, the only evidence that Mr. Kargbo assisted with license plates was the questionable and inconsistent testimony of Kusa that Mr. Kargbo and Miguel stole license plates to be put on Kusa's two vehicles. However, Kusa acknowledged that he stole a license plate on September 3, 2009 (which was observed by law enforcement), and that he had the necessary tools (screwdriver and pliers) in his car, which were found by the police. Law enforcement also found two stolen license plates hidden in Kusa's residence when they conducted a search.

  B. <u>The History and Characteristics of the Defendant, the Need to Provide the Defendant with Needed Educational Training, and the Need to Provide Restitution</u>

Mr. Kargbo is 25 years old and he is a citizen of Sierra Leone who entered the United States legally as a refugee in 2002 or 2003. His father lives in Northern Virginia and his mother lives in Sierra Leone.

Mr. Kargbo chose to live in the United States so he could escape the danger and fear of living in war-torn Sierra Leone, and so he could join his father and begin a new life by becoming educated and finding employment, and he settled in Northern Virginia for that purpose. Since he entered the United States, Mr. Kargbo has attended school but had learning difficulties and also

trouble at home, so he left school. He has also maintained short-term employment on a frequent basis. He ultimately left the home of his father, and has lived independently since then, often staying in shelters when he could not afford to rent a room or an apartment.

As the PSR indicates, Mr. Kargbo has a very minor criminal record, resulting in only three criminal history points (at most) under the Sentencing Guidelines. He has *no prior felony* convictions and no convictions for violence or use/possession of weapons. His few misdemeanor convictions mainly involve possession of personal use amounts of marijuana along with a few traffic infractions.

Mr. Kargbo has used marijuana on a regular basis for many years, primarily as a way to deal with the trauma caused by his experiences in Sierra Leone during a time of brutal violence. As indicated in the PSR, he has never had the benefit of substance abuse treatment although his score on the drug use test indicated a "relatively severe drug related problem."

In regard to training or education, Mr. Kargbo would benefit from intensive schooling which would be available in the community but not as likely in prison, due to problems with verbal and cognitive skills. Upon completion of such an education and obtaining at least a GED, he would then be able to obtain more specialized training to assist in pursuing a valuable career.

In addition, although there may be a limited amount of restitution in this case, Mr. Kargbo is not financially able to pay restitution, or a fine or costs of court.

    C.    <u>The Kinds of Sentences Available</u>

There is a mandatory minimum term of imprisonment required by statute for the firearms offenses, which must be imposed consecutive to any period of incarceration imposed on the conspiracy and robbery charges. There is no mandatory minimum period of imprisonment on

those non-firearms charges. Therefore, the kind of sentence available in this case includes a period of incarceration of one (1) day for the conspiracy and robbery charges, followed by a sentence of seven (7) years imprisonment on the firearms charges, for the reasons set forth in the constitutional challenge to 924(c). That would then be followed by a period of supervised release. A fine is also permitted, but Mr. Kargbo agrees with the conclusion in the PSR that he lacks the ability to pay a fine.

>   D.   The Need for the Sentence to Reflect the Basic Aims of Sentencing: "just punishment," deterrence, and protection of the public.

Mr. Kargbo had very minimal involvement, if any, in the robbery conduct charged in this case, and he has a very minor criminal record, and there is an indication of limited verbal and cognitive skills, accompanied by PTSD (post-traumatic stress disorder) and marijuana abuse, which are caused or aggravated by years of growing up in an environment of violence and fear in Sierra Leone. Therefore, as to Mr. Kargbo, a prison sentence of seven years (84 months) and one day, followed by five (5) years of supervised release, is more than adequate to provide for just punishment, deterrence, and protection of the public.

In *Atkins v. Virginia*, 536 U.S. 304, 311 (2002), the Supreme Court recognized that the Eighth Amendment succinctly prohibits "excessive" sanctions. The Court also stated that it is a precept of justice that punishment for crime should be graduated and proportioned to the offense. *Atkins v. Virginia*, 536 U.S. at 311; *Weems v. United States*, 217 U.S. 349, 367 (1910). The basic concept underlying the Eighth Amendment is nothing less than the dignity of man. *Atkins v. Virginia*, 536 U.S. at 311; *Trop v. Dulles*, 356 U.S. 86, 100 (1958).

It is not severe punishment that promotes respect for the law, it is appropriate punishment. *United States v. Olhovsky*, 562 F.3d 530, 551 (3d Cir. 2009). Unduly severe punishment can negatively affect the public's attitude toward the law and toward the criminal justice system. *United States v. Olhovsky*, 562 F.3d at 551.

  E. <u>The Need to Avoid Unwarranted Disparities In Sentencing</u>

One of the explicit § 3553(a) sentencing factors is "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Andualem Kusa, who actually committed the armed robberies and attempted robberies in this case, and who actually possessed, carried, or otherwise used a firearm in relation to those robberies, received a sentence of 35 years in prison. Although Kusa had no previous criminal record, the criminal record of Mr. Kargbo was minimal, and the offense conduct of Kusa was far more substantial, critical, and egregious than that of Mr. Kargbo. Therefore, a sentence for Mr. Kargbo greater than 35 years in prison would obviously constitute an unwarranted and significant sentence disparity. Such a disparity would be in violation of the intent of § 3553(a) that the court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" § 3553(a).

CONCLUSION

For the reasons set forth above, and in the motion to declare 924(c) unconstitutional, Mr. Kargbo requests that this Court impose a sentence of incarceration of <u>seven years (84 months) and one day</u>, followed by five (5) years of supervised release. Such a sentence is sufficient, <u>but not greater than necessary</u>, to accomplish the purposes of sentencing as set forth in 18 U.S.C.

§3553(a). In addition, Mr. Kargbo requests that the Court impose no fine given his inability to pay.

Respectfully submitted,

CHARLES MORANI KARGBO

By Counsel,

Michael S. Nachmanoff,
Federal Public Defender

By: _____/s/_____
Kevin Brehm
Assistant Federal Public Defender
pro hac vice (for now)
Attorney for Charles Morani Kargbo
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
703-600-0825
703-600-0880 (fax)
kevin_brehm@fd.org

CERTIFICATE OF SERVICE

     I hereby certify that on November 12, 2010, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jonathan Fahey, Esq.
Assistant U.S. Attorney
David Sharfstein, Esq.
Special Assistant U.S. Attorney
2100 Jamieson Ave.
Alexandria, Virginia, 22314
(703) 299-3787
(703) 299-3981 (facsimile)
jonathan.fahey@usdoj.gov
david.i.sharfstein@usdoj.gov

     Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the foregoing pleading will be delivered to Chambers within one business day of the electronic filing.

By:       /s/      
Kevin Brehm
Assistant Federal Public Defender
pro hac vice (for now)
Attorney for Charles Morani Kargbo
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
703-600-0825
703-600-0880 (fax)
kevin_brehm@fd.org